# J. W. Adamson v. The State.

No. 12364. Delivered May 22, 1929.
Rehearing denied November 27, 1929.

The opinion states the case.

*Ratliff & Ratliff* of Haskell and *Lon A. Brooks* of Abilene, for appellant.

*Clyde Grissom,* District Attorney of Haskell, and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, arson; penalty, fifteen years in the penitentiary.

The evidence for the State tended to show that appellant had traded for à residence in the town of Haskell, Texas, which he employed Luther Rogers to burn. Rogers testified in substance that he was to be paid $100.00 by appellant for burning the house. It is shown that one J. W. Quattlebaum occupied the house with his family; that it was set on fire shortly after the family retired at nighttime and was completely burned. Rogers testified that he had been brought to Haskell by appellant; that he purchased a quart of gasoline and waited until after dark, poured the gasoline on the house and set it on fire, and returned to Abilene, arriving there the next morning, and phoned to appellant to meet him, which appellant did; that they together went to a rooming house where he registered and retired in the middle of the day; that he demanded of appellant his pay and appellant being unable to pay him cash, gave a note, securing same with another note, and put the same up with a third party; that at two different times appellant gave him small checks for expense money. The checks and the note were introduced in evidence. It is further shown in corroboration of the accomplice that appellant and Rogers did in fact meet in the town of Abilene the morning after the fire and did in fact go to the rooming house, where Rogers registered, and that the note was in fact put up with the third party. It was also shown by evidence other than Rogers that appellant had said that he hired Rogers to do the burning and also that he had endeavored to get others to burn the house and had been making particular inquiry with reference to insurance and whether or not the particular policy that was shown to be then on the house could be collected by him and had threatened to burn it on different occasions prior to the fire. The evidence further shows that the property had been deeded some two or three weeks before the fire to one Banowsky with the understanding at the time that it would be reconveyed upon payment to Banowsky by appellant of a certain sum of money within thirty days. There is also testimony of a rather vague and indefinite character of an agreement subsequent to this last mentioned conveyance by which Banowsky became the owner of the property in controversy. Whether this agreement was verbal or in writing and its exact terms are not

shown. The record further shows that appellant prior to the fire frequently referred to the property as his own and claimed it as his own up to the very time of the burning.

The indictment was in nine counts, among which were counts charging the property to belong to appellant and also counts charging the property to belong to Banowsky.

The Court submitted the counts alleging the property to belong to appellant and also those alleging the property to belong to Banowsky and authorized a conviction under each of them. It is insisted that the charge was erroneous which submitted the counts of the indictment alleging the ownership of the property in appellant because there was no evidence to support same. Taken as a whole, we regard the evidence as making it uncertain as to whom the property belonged, there being evidence, however, amply sufficient to support the finding that the property belonged to appellant, based upon the statements of appellant that he owned same and arising also out of the vague and indefinite character of the agreement of exchange as testified to by Banowsky. It was good pleading to allege the ownership in both and safe procedure for the Court, as he did, to submit both to the jury.

Many transactions were testified to by witnesses which occurred after the burning of the building in question. Bills of exception appear to practically all of these, presenting the question that the offense had already been committed and the conspiracy ended and that such testimony was inadmissible. As illustrative of these, appellant complains because the accomplice Rogers was permitted to testify that he registered at the rooming house the next day after the fire. As already stated, it was shown that appellant accompanied the accomplice Rogers to the rooming house and it further appears that he paid for his room and the rather unusual circumstances also exhibited in the record that he retired in the middle of the day.

The rule excluding declarations of conspirators made in the absence of the accused after the termination of the conspiracy has no application under the above facts. The appellant was present and the transaction tended strongly to prove the allegations of the indictment. The burned building was shown to be insured and aside from the actual presence of the appellant, which rendered the testimony clearly admissible, it further appears that the conspiracy had not terminated, since the insurance had not been collected nor had the accomplice been paid. Gracy v. State, 57 Tex. Crim. Rep. 68. It hardly seems necessary to say that appellant's contention that the

testimony was inadmissible with reference to putting up the note with the third party has no merit. The indictment charged that appellant hired Rogers to burn the building and was not present when same was burned and this was material testimony tending to establish the truth of this allegation. Appellant seems to be laboring under the impression that all transactions happening after the consummation of the crime are inadmissible and numerous bills are shown in the record which in their last analysis present only this question and all of them are so obviously without merit that we deem it unnecessary to discuss them.

One witness testified to a statement of appellant which in effect was a confession of his guilt. Upon cross-examination it was shown that he had been indicted for the theft of an automobile. Upon being asked by appellant what became of the case, he replied that he never went to the penitentiary, that he was pardoned, whereupon appellant made a motion to strike the same as not responsive. We regard the answer as responsive to appellant's question. Cano v. State, 105 Tex. Crim. Rep. 166. Appellant insisted that the written evidence of his pardon was the best evidence. Appellant himself brought out the fact that he was pardoned and is therefore in no position to complain in this Court that same was secondary evidence. The bill is insufficient to present the question of disqualification of the witness because it fails to show that witness was ever convicted of a felony. The theft of an automobile is not per se a felony. It might be a misdemeanor, in which event the witness would not be disqualified, even if his pardon had not been proven.

The appellant insists that the Court erred in not affirmatively instructing the jury that they must believe beyond a reasonable doubt that the building was burned in order that the insurance thereon might be obtained. Art. 1312 of the Penal Code provides in part: "When a house is insured * * * the owner, if he burn the same, is guilty of arson." This article fixes the status of appellant's guilt and defines as a felony the burning of a house by its owner when the same is insured. To give the charge insisted on by appellant is to add something to the definition which the Legislature saw fit to omit and amounts in effect to a judicial amendment of Art. 1312, P. C., so as to make it read: "When a house is insured, the owner, if he burn the same in order that the insurance thereon might be obtained, is guilty of arson." There might be cases arising where such matter should be charged on defensively but suffice it to say that the present record presents no such question.

The appellant sought to have the jury instructed in effect that unless they find from the testimony other than that of Luther Rogers that appellant executed the hundred dollar note introduced in evidence, then in such event the note within itself and alone would not furnish the corroboration which the law requires in order to warrant a conviction of the appellant. Appellant relies particularly upon a line of seduction cases, including James v. State, 161 S. W. 472, in support of his contention. There is evidence aside from that of Rogers that appellant gave the note in controversy and the seduction cases cited have no application. In the James case, supra, there appears to have been no evidence to connect accused with the letters claimed as corroborative except that of the female seduced and in such a case the appellant was entitled to a charge that the letters under such circumstances did not furnish sufficient corroboration. The charge demanded by appellant in this case would in our opinion be on the weight of the evidence. The Court's charge on corroboration of accomplice testimony appears to us to give the appellant all he was entitled to.

Finding no errors in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant contends that this case should be reversed on the claim that there is no evidence to support a finding that the fire was of incendiary origin save that of Rogers. As supporting such proposition we are cited to Duncan v. State, 7 S. W. (2d) 79. In that case an *extra* judicial confession of the accused was used; no other evidence indicating that the house was set on fire was found in the record; the holding necessarily followed that the corpus delicti could not be established by the *extra* judicial confession alone. If Duncan had appeared in the trial court and made a *judicial* confession of his guilt a different rule would have obtained. See Underhill's Cr. Ev. (2d Ed.) ; Sec. 237; Wharton's Cr. Ev. (10th Ed.), Vol. 2, Sec. 638. In the present case Rogers was used as a witness by the state and under oath asserted that he fired the house in question. Adamson being on trial the question is not to what extent Rogers' admissions were binding on himself, but how

far did they go in establishing the commission of a crime and Adamson's connection with it? We find it unnecessary to consider whether Roger's testimony alone would, under the circumstances, be sufficient to establish that the crime of arson had been committed by him, because we are of opinion that other facts and circumstances in evidence are sufficient to corroborate him upon that point as well as appellant's connection with it.

Appellant urges especially our consideration of his bills of exception numbers eight, ten and eleven. Rogers had testified that a few days after burning the house appellant gave him a check for two dollars for expense money which check Rogers testified had been cashed by one Blanton. Bill number eight complains because Blanton was permitted to testify that he cashed for Rogers a check for two dollars which had Adamson's name signed to it, the objection being that it was a transaction had by Rogers out of appellant's presence and after the commission of the crime. We find no error in the proceeding. Rogers had testified to the same fact; he was an accomplice witness; the state had the right to corroborate him on this point by the testimony objected to.

Quattlebaum occupied the house which burned. Rogers was a stranger in Haskell; he did not know who lived in the house which he claimed had been pointed out to him by appellant. Rogers' description of the house burned by him and its location was somewhat general. It was necessary for the state to show that the house burned was occupied by Quattlebaum. Bills ten and eleven reflect the following occurrence. Rogers was permitted to testify over objection that during the trial he had gone with one Fields to a place where there had been a fire and that said place was where the house had stood which he (Rogers) burned. Fields, over objection, was permitted to testify that he had gone with Rogers to where there had been a fire and that witness knew Quattlebaum was living there when the house burned. Nothing that Rogers said to Fields or that Fields said to Rogers was admitted. No error is shown. Marta v. State, 81 Tex. Cr. R. 135, 193 S. W. 323; Huey v. State, 81 Tex. Cr. R. 554, 197 S. W. 202; Willman v. State, 92 Tex. Cr. R. 77, 242 S. W. 746; Long v. State, 97 Tex. Cr. R. 516, 262 S. W. 481; Gray v. State, 99 Tex. Cr. R. 305, 268 S. W. 941.

The motion for rehearing is overruled.

*Overruled.*