LEM BRALEY V. STATE.

No. 24959. February 14, 1951.
Rehearing Denied April 25, 1951.

16

Hon. Robert A. Hall, Judge Presiding.

*Hughes & Monroe,* by *T. F. Monroe,* Dallas, for appellant.

*Will R. Wilson, Jr.,* Criminal District Attorney, *Charles S. Potts* and *Hugh W. Lyerly,* Assistants Criminal District Attorney, Dallas, and *George P. Blackburn,* State's Attorney, Austin, for the state.

DAVIDSON, Judge.

The conviction is under Art. 619, P. C., prohibiting the keeping and exhibiting of a policy game, with punishment assessed at four years in the penitentiary.

The facts relied upon to show appellant's guilt are circumstantial, and may be stated as follows:

Policy writers for the "Texas and Louisiana Wheel" sold policy throughout the city of Dallas. The money from these sales, as well as the policy slips, were placed in bags bearing numbers identifying the seller, carried to a designated place, and there delivered to a "checkin man." He, in turn, delivered the bags to "runners," who carried and delivered the bags to Room 727 in the Southland Hotel. After the drawing, the bags were returned, through the same process and place, to the writers who paid the holders of the winning tickets.

In the instant case, Golightly was the writer, Criner, the check-in man, and Plater, the runner. The central meeting place was "Stone's Cafe" or "Saratoga Buffet."

The testimony shows the operation of a policy game out of Rooms 727 and 726 of the Southland Hotel.

To show appellant's connection therewith, Criner, the check-in man, testified that he received twenty-five dollars per week for acting as such check-in man and that out of such salary he received $23.10 in cash, the balance of $1.90 being withheld for income taxes. In connection with his employment, he obtained a social security card in 1945, which he gave to the appellant.

It appears that on the 28th day of September, 1949, the date the offense is alleged to have been committed, peace officers made simultaneous raids upon Rooms 727 and 528 in the Southland Hotel, Stone's Cafe, and the home of Roland Bomberger. In Room 727 of the Southland Hotel, the officers found Joseph Dodd and Elihu Winn. There they found a suitcase containing money and policy sheets and twenty-five bags lying on the table, among other things. The money found totaled $289.40.

Appellant was registered in Room 528 at the Southland Hotel, a search of which room revealed a trunk containing $1,201.08. Some of the bills were loose and some wrapped. Among the bills were several that the witness Franklin, an underecover agent of the Waco police department, identified as having been used by him about two days prior in purchasing policy tickets.

Other incriminating facts were offered in evidence but, inasmuch as we have concluded that the stated facts warranted the jury's conclusion of guilt, it would serve no useful purpose to state them.

The state offered in evidence memoranda which appellant had delivered to Fry, a public accountant, from which the accountant was to prepare appellant's income tax returns for the years 1947 and 1948. Some of the handwriting thereon was identified as being that of appellant. From this memoranda the witness Fry testified he had made income tax returns for the partnership in 1947 of Braley, Bickers, and Stone, the names appearing on the memoranda, and for the year 1948 for the partnership of Braley, Bickers, Taylor, and Stone, as appeared thereon, showing the earnings of the partnership and salaries paid to employees, including Criner, the "checkin man," and amounts paid as rent to the Southland Hotel and a stationery bill to Tigert Printing Company of Dallas. The proportionate part each partner received from the partnership was shown.

Appellant objected to the introduction of these memoranda

and also to the testimony of the witness Fry in identifying the same as having been delivered to him by appellant and upon which income tax returns for the years mentioned were based. Among the objections to said testimony was that it was hearsay in not being identified as having been made by appellant and that it constituted unwarranted proof of income tax returns.

The memoranda were identified as having been delivered by the appellant to the witness for a special purpose. Whether same were or were not in his handwriting was immaterial, for appellant made same his act and became responsible therefor by the representation he made to the accountant and from which the income tax returns were to be made. The memoranda contained matters which constituted a declaration against the interest of appellant and became admissible under that rule.

While it is true that the memoranda furnished the witness Fry by the appellant related to the years 1947 and 1948, and the transaction for which appellant stands here convicted occurred in 1949, such fact, however, would not render the memoranda inadmissible. That would be a matter going to the weight of the evidence rather than its admissibility, especially in view of the testimony of the writer, Criner, that he had been a writer of policy for the "Texas and Louisiana Wheel" for three years prior to 1949.

The other objections of appellant relating to· proof of the acts and conduct of others outside the presence and hearing of the appellant are answered by the proposition of law that acts and conduct of co-conspirators pending or during the consummation of or in furtherance of the common design are admissible. Branch's P. C., Sec. 694.

Other bills of exception appearing in the record have been examined. The qualifications placed thereon by the trial court show the absence of any error.

The judgment is affirmed.

Opinion approved by the court.

### ON MOTION FOR REHEARING.

GRAVES, Presiding Judge.

Appellant's motion for rehearing is mainly concerned with

Bills of Exception Nos. 1 and 3 relative to the introduction of "State's Exhibits 53, 54 or 55," the burden of said objection being the claimed error in our original opinion wherein it is stated:

"The State offered in evidence memoranda which appellant had delivered to Fry, a public accountant, from which the accountant was to prepare appellant's income tax returns for the years 1947 and 1948. Some of the handwriting thereon was identified as being that of appellant."

This statement is complained of because it is alleged that the testimony of Mr. Fry, the public accountant, never did identify Mr. Braley (the appellant) as having delivered this memoranda to him. We quote from the testimony of Mr. Fry as follows:

"I know the defendant, Lem Braley. I have known him about three years, I would say. I have been employed by the defendant Lem Braley in my capacity as a public accountant, for the preparation of income tax returns. Mr. Braley has been personally in my office. I prepared an income tax return for Lem Braley for the year 1948. Mr. Braley came in person to my office for that purpose. He brought with him a memorandum containing facts, figures, and accounting data to present to me at that time."

\*       \*       \*       \*

"As to whether he personally brought that document identified as State's Exhibit 53 to me, I will answer that he either brought it up there and handed it to me, or left it for me, and I, from that, prepared the return."

It will be seen therefrom that in the first quotation the witness made the statement that this memoranda was brought to his office by Mr. Braley in person, whereas in the second excerpt above he said that it was either brought up by Mr. Braley or left it for him and that he prepared the return. The return that he prepared sets out many items, some of which had been traced as having been expenses upon the part of Mr. Braley.

Practically the same testimony is evident relative to the income tax return of Mr. Braley for the previous year, and much of it evidences similar expenses and income as that for the year 1948.

We do not think any serious matter is evidenced by the fact

that the jury, as well as this court, accepted the first statement of the accountant above quoted rather than leaving the same in doubt as to who brought these figures and facts to the public accountant and from which figures it seems Mr. Braley's income tax returns for the years 1947 and 1948 were prepared and accepted by him.

We think this case has been properly disposed of on the original hearing, and the motion for rehearing is therefore overruled.