## FRANK SILAS WILLIAMS V. STATE

No. 32,172. February 22, 1961

*Edward L. Lasof* and *Donald Lasof,* Houston, for appellant.

*Dan Walton,* District Attorney, *Carl E. F. Dally, Charles C. Castles,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

ON MOTION TO REINSTATE THE APPEAL

WOODLEY, Presiding Judge

Notice of appeal having been entered of record, the appeal is reinstated and our prior opinion and orders are withdrawn.

The offense is burglary; the punishment, 7 years.

The evidence shows that during the night of October 9th the Wilcox Drug Store, in Anahuac, was burglarized and an assortment of narcotics, a radio, a wrist watch, and other merchandise were stolen.

Entry into the building was made through the roof by boring holes and removing a portion thereof.

Appellant and one James Lyles were arrested in Houston the following afternoon when they were seen in the automobile which had been parked near the drug store, description and license number of which had been reported to Houston officers.

Lyles made a statement and showed the officers where the property introduced in evidence and identified as that taken from the Wilcox Drug Store, and some tools, were hidden in the weeds on Brian Bayou Road.

Appellant's confession made to County Attorney Jenson was introduced in evidence which reads, in part:

"James Lyles and myself left Houston about 10:00 P.M. on Friday, October 9, 1959, and from a drugstore located at Navigation and Wayside. We came to Anahuac in Chambers County, Texas, on State Highway No. 73. James Lyles was driving a 1950 Studebaker owned by Doris Jean Tidwell who I believe lives in Houston. This automobile was borrowed by James Lyles. We stopped several places to have a beer and we arrived in Anahuac, Texas, about 12:30 A.M. on Saturday, October 10, 1959. We drove around and *seen* the drug store. We got out of the car and went to the back of the store. We climbed up the drain pipe. James Lyles took the skylight out and bored a hole through the roof with a brace and bit. We went into the drug store. We took all the narcotics we could find. We took a portable radio, cig*r*ette lighters and a watch, necklaces and other costume jewelry. There were two safes in the drugstore. The door to one safe was open. We didn't fool with the locked safe. James Lyles and myself climbed out of the drugstore through the hole we had drilled in the roof. James Lyles and myself got into the 1950 Studebaker automobile and went toward Houston on State Highway 73 and spent the night at a motel near Greens Bayou or Channelview. I

don't remember the name of the motel. James Lyles told me he got up about 9:00 A.M. and got some clothes out of the cleaners. James Lyles came back after me about 12:30 P.M. on Saturday, October 10, 1959. We sat around the motel until about 3:00 P.M. and started back to Houston. We stashed the stuff we had taken from the Wilcox Drug Store in Anahuac, Chambers County, Texas, on the side of a ditch out close to Highlands resorvoir. James Lyles and I were arrested right after we had stashed the stuff at a drive-in grocery by two Harris County deputy sheriffs. I did not have the permission of Mr. C. C. Wilcox or anyone else to break and enter his drug store and take the narcotics, radio and other things that James Lyles and I carried off."

Appellant complains that the court erred in failing to charge the jury on the issue of insanity as a defense and on temporary insanity.

The burglary was committed on the night of October 9, 1959. Appellant was arrested the following day and two or three days later was released on bond. Trial was had on March 7, 1960.

The evidence which appellant contends raised the issue of insanity at the time the burglary was committed is that of his mother who testified that he was subject to epileptic seizures which lasted for five or ten minutes: "He gets to where he doesn't know a thing. He doesn't even know me. Q.  For how long? A. I would say two hours anyway."

Mrs. Williams testified that he had a seizure a week before the trial; that about a month before the trial, and again three weeks later he cut his wrists; that he had been having epileptic seizures two years; that the last one was in the doctor's office and lasted 10 or 15 minutes; that he became unconscious when he had such seizures.

It will be noticed that the evidence does not suggest that appellant was in a seizure or was suffering the effects of a seizure at the time he went from Houston to Anahuac, climbed up the drain pipe to the roof of the drug store, took all the narcotics he could find as well as other property, and climbed out through the hole in the roof.

Mrs. Williams' testimony, on the other hand, shows that he could not have committed the burglary had he at the time been in a seizure or suffering from the effects of a recent seizure.

The issue of insanity at the time of the burglary not being raised, the trial court did not err in failing to instruct the jury upon the law of insanity as a defense. Cook v. State, 71 Tex. Cr. R. 532, 160 S.W. 465. See also Leeper v. State, 29 Tex. Cr. R. 63, 14 S.W. 398.

Appellant contends that the court erred in not permitting his counsel to ask Mrs. Williams whether or not she had an opinion as to whether appellant knew the difference between right and wrong.

The question to which the state's objection was sustained was: "Mrs. Williams, from what you have observed and seen your son do under these conditions, do you have an opinion as to whether or not he knows the difference between right and wrong at the time he may be seized with these spells you testified to?"

Mrs. Williams having testified that he lost consciousness and that "he gets to where he doesn't know a thing. He doesn't even know me" during a seizure and for some two hours afterwards, the court's ruling was not error calling for reversal. This is especially so because appellant was not in a seizure or suffering from the effects of a recent seizure at the time of the burglary or at the time of the trial.

The evidence shows that appellant and Lyles were acting together in the burglary and theft, hence were co-conspirators. When Lyles made a statement to the officers and pointed out the stolen property, and the tools used, the property jointly stolen had not been finally disposed of. We overrule the contention that the stolen property and tools recovered were inadmissible. We also overrule the contention that an issue should have been submitted to the jury as to whether or not a conspiracy to commit the burglary and theft existed.

The remaining claim for reversal is the contention that the court erred in overruling appellant's motion for new trial based upon the fact that a member of the jury separated from other jurors and visited the drug store during the trial.

Mrs. Pollard, the only woman on the jury, testified that the trial lasted two days; that on the second day she went to "Clores" for lunch, accompanied by a lady deputy sheriff; that after lunch they went to the post office and to Wilcox' Drug Store where she saw appellant's counsel:

"Q. You were sitting at the table? A. Miss Moore and I, and I believe a nurse.

"Q. How long did you stay there? A. Approximately fifteen minutes."

She testified that the drug store was the place that was burglarized; that she did not discuss the case and there was no conversation about the case at all; that the officer was with her at all times; that she did not go back to where the prescriptions are filled; that she did not talk to Mr. Wilcox, the owner, and did not know him; and did not inspect the roof or observe anything about the prescription department while in the drug store.

In the absence of any showing that the juror acquired information material to the case, or of any discussion or wrongful use of anything she saw at the drug store, the juror's visit to the drug store did not require that a new trial be granted. Wooten v. State, 111 Tex. Cr. R. 226, 13 S.W. 2d 87; 42 Tex. Jur. 415, Trial-Criminal Cases, Sec. 326.

The motion for new trial alleged that the juror "was permitted to sit at a table with the matron in charge and two other persons, and there visited and carried on a conversation with said persons."

To sustain such allegation appellant interrogated the juror, but made no inquiry as to whether she "visited or carried on a conversation" with anyone, except that he brought out from the juror her testimony that there was no conversation about the case at all, and that she did not discuss the case with anyone while she was in the drug store.

The separation of a part of the jury with an officer is not cause for reversal if no probable injury is shown. Dukes v. State, 162 Tex. Cr. R. 71, 282 S.W. 2d 235; Branch's Ann. P.C. 2d Ed. Sec. 601.

No reversible error appearing, the judgment is affirmed.