**Lionel A. WHITE, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 42161.**

Court of Criminal Appeals of Texas.

July 9, 1969.

State's Rehearing Granted Dec. 3, 1969.

Appellant's Rehearing Granted
March 18, 1970.

1. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476; Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255.

Richard Thornton, Galveston, court-appointed counsel, for appellant.

Jules Damiani, Jr., Dist. Atty., R. L. Wilson, Asst. Dist. Atty., Galveston, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is the possession of Narcotic Paraphernalia, with two prior noncapital felony convictions alleged for enhancement; the punishment, life.

Laying aside the question of confrontation[1] so urgently urged by appellant, we are met at the outset with the question of whether or not the confession of one co-conspirator is admissible against the other where the statement or confession is not uttered in furtherance of the conspiracy. Judy Guillory, the co-conspirator, told police officers who were executing a search warrant in appellant's apartment that she had arrived at the apartment for the purpose of securing a shot of narcotics, found that appellant had none, had given him $15.00 with instructions to go out and buy two caps, one for herself and one for him, and that appellant kept his paraphernalia down the hall in a bathroom common to all tenants on the floor. These statements by Guillory, related at the trial by the police officers to whom she spoke, were admitted over appellant's objections evidently upon the trial court's reliance upon the rule announced in Saddler v. State, 167 Tex.Cr.R. 309, 320 S.W.2d 146:

"The rule is well settled that the acts and declarations of one conspirator during the *furtherance* of the conspiracy are admissible against the other conspirators. * * * This rule applies though the act or declaration occurred out of the presence and hearing of the conspirator on trial."

This narration by Guillory to the police officers cannot be said to have been in "furtherance of the conspiracy", for when this statement was made to the officers, the conspiracy came to an effective end. It would tax credulity of any man to say that a statement made to those in constituted authority, in this case the police, is done so for the purpose of furthering, helping forward, promoting, advancing or progressing [2] the conspiracy [3].

The hearsay testimony was thus not admissible under the co-conspirator exception, and its introduction requires a reversal of this conviction.

For the error of the court in admitting the testimony of the officers in which they detail what the co-conspirator Guillory told them, the judgment is reversed and the cause is remanded.

WOODLEY, P. J., not participating.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

The conviction is for the possession of narcotic paraphernalia for the purpose of subcutaneous injection of narcotic drugs in a human being. Two prior convictions for felonies less than capital were alleged for enhancement. The punishment was assessed at life under Article 63, V.A.P.C.

The record reflects that officers, armed with a search warrant, went to appellant's apartment where Judy Guillory stated that she had given appellant fifteen dollars so that he could purchase two capsules of heroin, one for him and one for her, and that he would be returning shortly. She also told the officers that appellant kept his rig (narcotic paraphernalia) in a gas heater in the bathroom. When appellant returned to the apartment and saw the officers, he ran and threw two capsules of heroin in a gutter where it was later recovered.

When the officers found the paraphernalia appellant stated, "That's my stuff." The paraphernalia contained traces of heroin and consisted of ten hypodermic needles, an eyedropper and a bottle cap.

Appellant stipulated that he was the person who had been convicted for the prior offenses as alleged in the indictment.

In the first ground of error it is contended that the court erred in admitting the evidence found as a result of the search, because the affidavit upon which the search warrant was based did not contain sufficient facts to show probable cause under Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and other United States Supreme Court decisions.

The affidavit, made by Paul DeLa Rosa, Jr. on October 27, 1967, recites that he had good reason to believe that Lionel A. White possessed heroin and it is now concealed at the apartment described in the affidavit. He was informed on October 26, 1967 by two reliable, credible and trustworthy citizens of Galveston County that appellant was involved in illicit narcotic traffic and that he kept a ready supply of heroin at the apartment; that White kept the heroin either on his person while at the apartment in the bedroom at said apart-

2. Black's Law Dictionary, 4th Ed., West Publishing Co., 1951, p. 805; Maryland Casualty Co. v. Smith, Tex.Civ.App., 40 S.W.2d 913.

3. We are not here dealing with a conspiracy to bribe an officer, in which case a statement to an officer could come within the exception to the hearsay rule set out above. Womble v. State, 165 Tex. Cr.R. 23, 301 S.W.2d 928.

ment, in clothing or under-clothing worn by White or located at said apartment; that one of the informants stated that he had gone to the apartment on several prior occasions and purchased narcotic drugs from White and that the drugs had been secreted at the premises; that the two credible persons had given him information on previous occasions upon which he relied and which proved to be correct; that he further relied on the above information and had kept the premises and White under surveillance and had seen White go to and leave the premises at all hours in the company of persons of disreputable character.

The affidavit contained sufficient facts for the magistrate to conclude that probable cause existed. Crotts v. State, Tex. Cr.App., 432 S.W.2d 921. See Aguilar v. State, Tex.Cr.App., 444 S.W.2d 935, and the cases therein cited. The first ground of error is overruled.

In the second ground of error complaint is made because the court allowed the State to introduce into evidence the statement of Judy Guillory to the officers that appellant had gone to buy some heroin for their use and that appellant kept the paraphernalia in the gas heater in the bathroom near the apartment. He objected to this testimony on the grounds that it was hearsay and that he was not confronted with the witness at the trial. He contends that the State did not produce the witness or account for not doing so.

In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, relied upon by appellant, Bruton was tried jointly with Evans. A confession made by Evans inculpating Bruton was introduced. The trial court instructed the jury that a co-defendant's confession inculpating Bruton had to be disregarded on his guilt or innocence. The Supreme Court held " * * * that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining peti-

tioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. * * * " In footnote number 3, the Court stated:

"We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence, see Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790; Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196, the problem arising only because the statement was (but for the violation of Westover, [Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694] supra, n. 1) admissible against the declarant Evans. * * * There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause."

The Supreme Court of the United States has held that the hearsay exception to statements made during the progress of a conspiracy is not in conflict with the Confrontation Clause. Delaney v. United States, 263 U.S. 586, 590, 44 S.Ct. 206, 68 L.Ed. 462 (1924).

In Aguero v. State, 164 Tex.Cr.R. 265, 298 S.W.2d 822, 826, the offense was possession of heroin. A conspiracy between Alvarez and Aguero was shown. This Court stated:

"The acts and declarations of one co-conspirator are admissible against other conspirators during the furtherance of the conspiracy."

In Saddler v. State, 167 Tex.Cr.R. 309, 320 S.W.2d 146, this Court held:

"The rule is well settled that the acts and declarations of one conspirator during the furtherance of the conspiracy

are admissible against the other conspirators."

Saddler was expressly based, in part, on Aguero v. State, 164 Tex.Cr.R. 265, 298 S.W.2d 822, and on Angle v. State, 165 Tex.Cr.R. 305, 306 S.W.2d 718, 723, where this Court stated that "* * * the acts of appellant's co-conspirator which took place during the existence of the conspiracy were admissible." See also Parnell v. State, 170 Tex.Cr.R. 30, 339 S.W.2d 49, 50.

Such acts or declarations are admissible even though they are made outside the presence of the co-conspirator on trial. Braley v. State, 156 Tex.Cr.R. 15, 238 S.W.2d 539; Bannister v. State, 112 Tex. Cr.R. 158, 15 S.W.2d 629; Saddler v. State, supra, and Aguero v. State, supra.

Appellant contends that the conspiracy was complete when the agreement to purchase the heroin was made, and therefore the statements of Judy Guillory to the officers were not admissible.

The substantive crime of conspiracy was complete at the time of the agreement. Article 1623, V.A.P.C. There was sufficient evidence for the trial court to conclude that the final objective of the conspiracy, the injection of the heroin, had not been completed. A conspiracy is not finally terminated until everything has been done that was contemplated to be done by the conspirators. Robins v. State, 134 Tex.Cr.R. 617, 117 S.W.2d 82.

In Adamson v. State, 113 Tex.Cr.R. 335, 21 S.W.2d 675, a building was burned to collect insurance. This Court held that testimony of several witnesses showing transactions after the burning of the building was admissible, because the conspiracy had not terminated where the insurance had not been collected nor the accomplice paid.

Williams v. State, 170 Tex.Cr.R. 595, 343 S.W.2d 263, held that the statement and the fact that a co-conspirator pointed out the tools used in, and the stolen property taken from, the burglary were admissible where the stolen property had not been finally disposed of.[1]

There was sufficient evidence to show the existence of the conspiracy. The acts and declarations of appellant and the finding of the paraphernalia where Judy Guillory said it would be was sufficient for the trial court to conclude a conspiracy existed. The agreement of the parties to act together in an unlawful act or design may be established by circumstantial evidence. Price v. State, Tex.Cr.App., 410 S.W.2d 778; Westfall v. State, Tex.Cr. App., 375 S.W.2d 911; Roberts v. State, Tex.Cr.App., 375 S.W.2d 303.

---

1. The record shows that Judy Guillory was not under arrest at the time and had not been arrested at the time of the trial. Even if one is under arrest, it does not necessarily mean a withdrawal from the conspiracy. In Howell v. United States, (U.S.D.C., Illinois) 300 F.Supp. 1017 (1969), the Court stated: "While the law is clear that an 'arrest or incarceration *may* constitute a withdrawal from a conspiracy, it does not follow that in every instance it *must*.' United States v. Agueci, 310 F.2d 817, 839 (2nd Cir. 1962), cert. denied Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1962). In most of the cases to which petitioner refers as examples of situations wherein an arrest did constitute a withdrawal from a conspiracy, the arrest was for the crime of conspiracy. Gay v. United States, 322 F.2d 208, 209 (10th Cir. 1963); Cleaver v. United States, 238 F.2d 766, 768 (10th Cir. 1956); United States v. Cohen, 197 F.2d 26 (3rd Cir. 1952). However, in the instant case, as in United States v. Agueci, 310 F.2d 817, 838 (2nd Cir. 1962), the arrest which is said to have constituted withdrawal from the conspiracy was not for the crime of conspiracy, but for another violation. As possession of narcotics and conspiracy to violate the narcotics statutes are separate and distinct crimes, Id. at 828, an arrest for violation of a state narcotics possession charge does not logically constitute withdrawal from a conspiracy in violation of federal law. Thus, it cannot be said that petitioner withdrew from the conspiracy until he was arrested in early May, 1963, in Chicago, Illinois, on the federal conspiracy charge."

From our holdings in Aguero, Saddler and Angle, previously discussed, it can be readily seen that the rule in Texas does not require the incriminating acts or declarations to " * * * be in the furtherance of the conspiracy."

The Uniform Rules of Evidence has adopted in substance the same position and would allow the admission of any act or statement of a co-conspirator which is relevant to the conspiracy and is made during the course of the conspiracy.[2]

The statements by the co-conspirator Guillory in the present case were properly admitted as an exception to the hearsay rule.[3] No error is shown.

The second ground of error is overruled.

In the third ground of error, it is contended that the trial court erred in admitting a statement made by appellant while he was under arrest and was not warned in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

After appellant entered the apartment building he saw the officers, ran and threw the heroin. When the officers showed him the narcotic paraphernalia within three or four minutes after he was apprehended, appellant stated, "That's my stuff." At the time he appeared to be nervous and out of breath.

The trial court did not err in holding that the statement was res gestae. Article 38.22, Sec. 1(f), V.A.C.C.P., provides in part: "Nothing contained herein shall preclude the admissibility * * * of any statement that is the res gestae of the arrest or of the offense."

In Gonzales v. State, Tex.Cr.App., 410 S.W.2d 435 (1966), cert. denied 387 U.S. 925, 87 S.Ct. 2044, 18 L.Ed.2d 982, this Court held that after an arrest, an oral confession with regard to heroin was admissible under the res gestae exception where the confession was made within seconds after the officers entered the apartment. In Sparks v. State, 161 Tex.Cr. R. 100, 275 S.W.2d 494, the conviction was for possessing marihuana. Sparks, who appeared to be nervous and excited, made a statement some ten minutes after his arrest that "I guess I will get ten years for this." The court held the statement was a part of the res gestae on the issue of possession of marihuana. See Moore v. State, Tex. Cr.App., 440 S.W.2d 643; Ramos v. State, Tex.Cr.App., 419 S.W.2d 359. In McCormick & Ray, Texas Law of Evidence, Sec. 1212, p. 88, is found:

"Of course, where the statements or acts of the accused satisfy the requirements of some other exception to the hearsay rule, e. g. spontaneous exclamations (res gestae) they are admissible even though they are incompetent as confessions because made while under arrest."

---

2. See Howell v. United States, supra. At page 1020, the Court noted:
"Finally, under the standard phrasing of the co-conspiracy exception, to be admissible, the incriminating statements must be in furtherance of the conspiracy. Commentators now recognize that the furtherance requirement is rarely literally applied to restrict admissible evidence to those statements which were made to advance the conspiracy, but is generally invoked to include any statement of a co-conspirator which is relevant to the conspiracy and is made during the course of the conspiracy. Comment, The Hearsay Exception for Co-conspirators' Declarations, 25 U.C.L.Rev. 530, 531 n. 5 (1958). The Uniform Rules of Evidence, Rule 63(9)(b) adopts such a position."

3. The contention that the absence of Judy Guillory was not accounted for is perhaps answered by appellant's own testimony during the hearing on the motion to suppress evidence when he testified that she was his common law wife. Article 38.11, V.A.C.C.P., provides, among other things, that a wife shall in no case testify against her husband in a criminal prosecution (except in cases where certain crimes are committed against her or her children). Common law marriages are recognized in Texas.

Miranda v. Arizona, supra, does not prohibit the introduction of volunteered statements.

The third ground of error is overruled.

The State's motion for rehearing is granted. The reversal is set aside and the judgment is affirmed.

MORRISON, Judge (dissenting).

I congratulate Judge Douglas on his industry expended in this case, but cannot bring myself to agree with him.

When a Court says that a co-conspirator is doing something in the furtherance of a conspiracy when he tells the police of the existence of the conspiracy, then the Court is writing without reason.

I respectfully dissent.

ONION, J., joins in this dissent.

OPINION
ON APPELLANT'S MOTION FOR
REHEARING

BELCHER, Judge.

The evidence has been re-examined, and it reveals the following:

The testimony of the police officers reflects that Judy Guillory told the officers, who were executing a search warrant in appellant's apartment, that she had arrived at the apartment for the purpose of getting a shot of narcotics and had given appellant fifteen dollars so he could go and purchase two capsules of heroin, one for him and one for her, and that he would be returning shortly. She also told the officers that appellant kept his rig (narcotic paraphernalia) in a gas heater in the bathroom in the hall. The statements made by Judy Guillory were related at the trial by the officers to whom she spoke.

Judy Guillory did not testify at the trial. Also, she did not testify at the examining trial or at any pre-trial hearing. The state did not reveal Guillory's whereabouts at the time of the trial, or undertake to account for not doing so, or show that she was unavailable; the appellant was not present when Guillory made the statements to the officers.

The bathroom was across the hall and about ten feet from the appellant's apartment, and it was common to all tenants and anyone else entering that floor of the building. When the appellant returned, he went toward the bathroom; seeing the officers, he ran and threw two capsules on the roof of an adjoining building where they were later recovered. Appellant was arrested at the scene. Later, in the apartment, when the officers placed the paraphernalia they found on the kitchen table in the presence of the appellant, he stated, "That's my stuff."

The appellant did not testify or offer any defense testimony.

The appellant objected to the admission in evidence of the testimony of the officers relating the statements of Judy Guillory on the grounds that they were hearsay and that he had not been confronted by Guillory at the trial. The objections were overruled, and the appellant excepted.

■ For the oral statements of Judy Guillory to be admissible in evidence, it is is essential that there be proof of the existence of a conspiracy. The oral statements of Judy Guillory as related by the officers at the trial were hearsay, and under the facts of this case the hearsay statements were insufficient to establish a conspiracy.

The throwing of the capsules by the appellant and his claim of the rig in the heater do not supply the essential evidence to establish a conspiracy which is necessary to admit in evidence the hearsay oral statements of Judy Guillory under the exception to the hearsay rule.

In Clark v. State, 158 Tex.Cr.R. 231, 254 S.W.2d 527, the evidence revealed similar

facts to those in this case. There the evidence and the holding were:

"Peace officers had occasion to go to the farm of Leslie Mitchell to make an arrest of a certain man whose name the record does not reflect. They drove to a servant house where the man was alleged to live. Upon arriving at the servant house they saw the automobile of appellant parked near by and appellant's young son seated therein under the steering wheel. Between the front and back seats of the automobile two sacks were found, one containing eight pints and the other twelve pints of whisky. Also, appellant's purse was found in the car.

"The arresting officer asked the boy 'where Pearl (appellant) was.' He replied that she was 'sitting in the house there reading.' When questioned as to whether the whisky belonged to him, he replied, 'No,' he was 'just driving for her.' Upon being asked if he knew the whisky was in the car, the boy replied, 'Sure, I know it.'

"Although the officers searched the house and premises for the appellant, she was not apprehended until some eleven hours thereafter.

"It is upon the foregoing facts that this conviction rests.

"The appellant did not testify or offer any affirmative defensive testimony.

"The trial court submitted the case to the jury upon the theory that the statements of the boy to the officers were those of a co-conspirator.

"As we understand it, it is the theory of the state that the boy's testimony was sufficient to show that it was appellant's whisky in the car and that his statement that he was 'just driving for her' and the further fact that the whisky and her purse were found in her car constitute sufficient evidence to support the conviction.

"Regardless of when proof is made of the existence of a conspiracy or the acting together, the fact remains that in order to establish a conspiracy or the acting together there must be some evidence of some participation or interest in the commission of the crime, apart from the testimony of the alleged co-conspirator. 18 Tex.Jur., Evidence—Criminal Cases, Sec. 122, p. 213. The participation of another in the crime cannot be established, alone, by the declarations of third persons in the absence of the accused, and there must be evidence apart from any acts or declarations of the alleged co-conspirators which will tend to show an acting together of the parties. 18 Tex.Jur., Evidence—Criminal Cases, Sec. 121, p. 212.

"The instant facts do not meet the requirement of the rules stated, and we are therefore constrained to agree that the facts are insufficient to support the conviction."

The original record in the Clark case has been examined and it reflects that appellant's son, who was in the car, did not testify at the trial.

■ The admission of the oral statements of Judy Guillory, under the record, was reversible error.

The appellant's motion for rehearing is granted. The order of affirmance on state's motion for rehearing is set aside and the judgment is reversed and the cause is remanded.